UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

HAYVIN GAMING, LLC,

                                  Plaintiff,

                                                                                                          Case # 23-CV-6172-FPG

v.

                                                                                                          DECISION & ORDER

WORKINMAN INTERACTIVE, LLC,

                                  Defendant.

## INTRODUCTION

This action arises out of a contract dispute between Plaintiff, Hayvin Gaming, LLC ("Hayvin") and Defendant, Workinman Interactive, LLC ("Workinman"). On March 24, 2023, Hayvin filed a complaint seeking declaratory judgment, specific performance, injunctive relief, and damages for, among other things, Workinman's alleged breach of contract. *See generally* ECF No. 1. Then, on May 9, 2023, Hayvin moved for a preliminary injunction and to expedite that motion. ECF Nos. 7, 8. In its preliminary injunction motion, Hayvin asked the Court to order Workinman to "reinstate or turn over a copy of the Slack channel for Hayvin Gaming's project called Hayvin Poker in compliance with its obligations under the operative contract between the parties." ECF No. 7 at 1. The Court granted Hayvin's motion to expedite, and scheduled oral argument on the preliminary injunction for May 25, 2023. ECF No. 10.

On May 16, 2023, Workinman requested that the Court reschedule oral argument because Workinman's counsel was not available on May 25. ECF No. 13. Given the parties' scheduling conflicts and the potential for delay, Hayvin requested that the Court decide the motion without oral argument. On May 17, 2023, the Court cancelled oral argument and determined that it would decide the matter without oral argument in accordance with Hayvin's request. ECF No. 14.

## BACKGROUND

Hayvin is the creator and owner of Hayvin Poker, a mobile "card-battle" game that Hayvin operates on a "freemium" model, meaning that, while it is free to play, players can purchase additional features and upgrades through credit card transactions.[1] ECF No. 1 ¶¶ 1, 15; ECF No. 7-1 at 5. Workinman is a videogame developer that provides a range of services for companies seeing to create, modify, or expand digital games. *Id.* ¶ 2.

Hayvin began developing the Hayvin Poker concept about nine years ago. *See id.* ¶¶ 15-17. In July 2020, Hayvin hired Workinman on several "sprint," or project-based, contracts to prepare Hayvin Poker for release. *Id.* ¶ 17. Eventually, Hayvin concluded that the sprint contracts were not an effective way to manage the project as the game's launch date approached. *Id.* ¶ 18. Hayvin and Workinman entered into an agreement on September 21, 2022 (the "Agreement"), under which Workinman agreed to provide two full-time developers and one-part time artist to provide dedicated support to the Hayvin Poker project, as well as a project developer. *Id.* ¶¶ 18-19. Hayvin would pay Workinman $24,000 per month for its services. *Id.* ¶ 20.

According to Hayvin, problems arose shortly after work began under the Agreement. *Id.* ¶ 22. Hayvin had trouble tracking Workinman's progress and ensuring that tasks were being completed as required. *See id.* ¶¶ 24-28; ECF No. 7-3 ¶¶ 5-6. To address these issues, Workinman set up a Slack channel to manage workflow and to serve as a repository for data and operating instructions for the Hayvin Poker project.[2] *See* ECF No. 7-3 ¶¶ 6-8. Among the information contained in the Slack channel are server maintenance instructions that allow Hayvin to address game performance, implement bug fixes, and maintain security by, for example, periodically

---

[1] The facts are drawn from Hayvin's Complaint (ECF No. 1); Hayvin's Motion for a Preliminary Injunction and supporting materials (ECF No. 7); and Workinman's Response in Opposition (ECF No. 17).
[2] Slack is a collaboration tool that allows teams to message, share files, and archive information.

resetting the server. *Id.* ¶¶ 8-11. It also contains other information including logins and passwords, historical build information, user support history, game artwork, and instructions for performance reports required by Hayvin's third-party contracts. *Id.* ¶¶ 13-14.

The problems came to a head in December 2022, when conflict arose over whether Workinman's developers were working full-time during regular business hours, as, according to Hayvin, the Agreement requires. *See* ECF No. 1 ¶¶ 25-26. As Hayvin tells it, Workinman informed Hayvin that it was going to "unilaterally terminate the Agreement 'in two weeks.'" *Id.* ¶ 29. The parties began discussing arrangements that would permit Hayvin to find a new developer without interrupting development in advance of Hayvin Poker's February 2023 launch.[3] *See* ECF No. 1 ¶¶ 29-32.

On January 3, 2023, Workinman's COO emailed Hayvin's Founder and President a document detailing a reduced scope of work, under which Hayvin would pay $14,000 per month in exchange for one full-time developer and one part-time artist. ECF No. 1 ¶ 38; ECF No. 1-3 at 2; ECF No. 1-4. The revised scope of work also provided that Workinman would work on the Hayvin Poker project until March 28, 2023, but that Hayvin would retain the option to terminate with 30 days' notice. ECF No. 1 ¶ 38. Workinman explained that, because they believed that Hayvin was working in good faith to find a replacement team, "the offer is up to 12 weeks" (*i.e.*, January 3 to March 28) and stated that the "full agreement" was in the attached document. ECF No. 1-4 at 1-2. Hayvin replied, "We are ok with this." *Id.* at 1; ECF No. 1 ¶ 39. Workinman then sent what Hayvin characterizes as "further proposed amendments under the guise of formalizing" the modification, which Hayvin rejected. ECF No. 1 ¶¶ 40-43.

---

[3] Workinman disputes Hayvin's characterization of these events. *See* ECF No. 11 at ¶¶ 29-32.

Hayvin made three payments of $14,000 pursuant to the revised scope of work, which it alleges is a binding modification to the retainer agreement. *See id.* ¶¶ 48, 49; ECF No. 17-1 ¶ 20. Workinman retained one $14,000 payment as partial payment of its December-January invoice.[4] ECF No. 17-1 ¶ 22. Workinman returned the next two payments believing that the Agreement remained in effect unmodified. *See id.* ¶¶ 23-24. Then, on March 18, 2023, Workinman sent Hayvin a notice of default pursuant to the Agreement. *Id.* ¶ 24. Workinman continued work on Hayvin Poker until April 24, 2023, when it notified Hayvin that it would stop work. *Id.* ¶¶ 26-28. Workinman archived the Slack channel the same day. *Id.* ¶ 29.

According to Workinman's counsel, Hayvin raised the issue of access to the Slack channel for the first time on May 2, 2023. *See* ECF No. 17 ¶ 11. The parties discussed the issue during a May 9 telephone conference and subsequent email correspondence before Hayvin filed the present motion. *Id.* ¶¶ 12-14. Hayvin explained that it needed the information to reset the game's servers and Workinman's counsel informed Hayvin that he would discuss the issue with Workinman. *Id.* ¶¶ 14-15. Hayvin filed the present motion later that day. ECF No. 7. The next day, on May 10, Workinman offered to provide the server reset information. ECF No. 17 ¶ 17. Hayvin rejected that offer. *Id.* ¶¶ 18-20.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A party seeking a preliminary injunction must establish that: (1) it is likely to suffer irreparable harm in the absence of preliminary relief; (2) either (a) it is likely to succeed on the merits, or (b) there are sufficiently serious questions going to the merits of its claims to make them fair ground for litigation; (3) the balance of hardships

---

[4] Workinman claims that Hayvin owed $18,000 for this invoice, reflecting a $6,000 discount for the holiday break. ECF No. 17-1 ¶ 22.

tips decidedly in its favor; and (4) a preliminary injunction is in the public interest." *Doe v. Zucker*, 496 F. Supp. 3d 744, 752 (N.D.N.Y. 2020).[5]

To satisfy the irreparable harm requirement, a movant "must show that there is a continuing harm which cannot adequately be addressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Rochester Drug Co-Operative, Inc. v. Hiscox Ins. Co., Inc.*, 466 F. Supp. 3d 337, 349 (W.D.N.Y. 2020) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)). This harm must be "neither remote nor speculative, but actual and imminent." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Grand River Entertainment Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). If a movant has failed to show irreparable harm, a court need not address the remaining elements of the test. *See Rochester Drug Co-Operative*, 466 F. Supp. 3d at 349 (quoting *Monowise Ltd. Corp. v. Ozy Media, Inc.*, No. 17-CV-8028, 2018 WL 2089342, at *1 (S.D.N.Y. May 3, 2018)).

## DISCUSSION

Hayvin makes two arguments to demonstrate that it will suffer irreparable harm in the absence of injunctive relief. First, it asserts that, absent a preliminary injunction, it will experience irreparable loss of reputation, goodwill, and business opportunities. Second, it argues that contractual language stipulating that failure to treat "work product," such as the information

---

[5] A heightened standard applies where a party seeks a "mandatory" injunction, that is, one that alters the status quo by commanding some positive act. *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). There, the movant must show a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm. *See New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015). The "status quo" in this analysis is not "the current state of affairs but the last actual, peaceable uncontested status which preceded the pending controversy." *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 174 (S.D.N.Y. 2022) (quoting *DJ Direct, Inc. v. Margaliot*, 512 F. Supp. 3d 396, 407 n.5 (E.D.N.Y. 2021) (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018))).

Because requiring Workinman to provide access to the Slack channel would "maintain the situation that would prevail if the contract were properly performed," the relief Hayvin seeks is better characterized as prohibitory, not mandatory. *Id.* Regardless, because, as explained below, Hayvin fails to establish irreparable harm under the ordinary standard, it would fail to do so under the heightened standard as well.

contained in the Slack channel, as Hayvin's property would irreparably harm Hayvin and entitle it to injunctive relief is binding on Workinman. As explained below, neither argument demonstrates that Hayvin is likely to suffer the kind of actual and imminent injury required to establish irreparable harm. As a result, Hayvin is not entitled to preliminary injunctive relief.

Irreparable harm is the "single most important prerequisite" for a preliminary injunction. *Faiveley Transport*, 539 F.3d at 118. "If an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify [injunctive] relief." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). "But irreparable harm may be found where damages are difficult to establish and measure." *Id.* (citing *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999)). The loss of reputation, goodwill, and business opportunities can therefore constitute irreparable harm. *See id.*; *see also New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010) ("Prospective loss of goodwill alone is sufficient to support a finding of irreparable harm."). Conclusory statements of loss of reputation and goodwill are not enough to demonstrate irreparable harm, however. *M.V. Music v. V.P. Records Retail Outlet, Inc.*, No. 20-CV-5524, 2023 WL 1070462, at *5 (E.D.N.Y. Jan. 27, 2023).

Hayvin has asserted that it is currently suffering irreparable harm arising out of the loss of reputation, goodwill, and business opportunities. Much of this harm arises out of Hayvin's inability to reset its servers. For example, without resetting the sever, Hayvin cannot assist the numerous users who are currently locked out of their accounts or address the "numerous programming issues with the game." ECF No. 7-1 at 12; ECF No. 7-3 ¶¶ 9-10. Resetting the server also "eliminates data that may have been corrupted or compromised, which is critical to ensuring that the [users'] personal and financial information . . . remains secure." *Id.* ¶ 11. Along with the

server reset information, Hayvin has also lost access to instructions required to run performance reports for its marketing partners, and is therefore losing out on investment opportunities. *Id.* ¶ 12. The Slack channel also contains a wealth of other important information including user support history, build history, and commissioned artwork, among other information that Hayvin asserts it needs to operate and market the game. *Id.* ¶¶ 13, 14.

While Hayvin has done more than offer a bare allegation of loss of reputation, goodwill, and business opportunities it has not shown that those harms are "actual and imminent" rather than remote or speculative. *Compare Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 279 (E.D.N.Y. 2014) (movant established irreparable harm where record indicated customers refused to do business with movant in the future and were providing negative reviews of movant to other potential customers) *with T-Mobile Northeast LLC v. Water Auth. of Western Nassau County.*, 249 F. Supp. 3d 680, 683 (E.D.N.Y. 2017) (movant's assertions that its lack of access to certain properties "could result in dropped calls" and that there "may be impaired wireless service" were too speculative to constitute irreparable harm). Although Hayvin has alleged that, because it is unable to reset the servers, some users are locked out of their accounts, it has not alleged that, for example, these users will refuse to play Hayvin Poker or any other games that Hayvin might produce in the future. *See Env't Servs.*, 7 F. Supp. 3d at 279. Nor has Hayvin alleged that this or the "numerous programming issues with the game" have caused players to leave negative reviews. *See id.* Hayvin also hints at hacking risks, but the Court is left to speculate as to whether and the extent to which such risks now exist. *See T-Mobile Northeast*, 249 F. Supp. 3d at 683. The same is true with respect to the performance reports that Hayvin alleges it is unable to run. Hayvin notes only that it must run performance reports at least once a month pursuant to its marketing contract. ECF No. 7-3 ¶ 12. It does not elaborate on the harm that failure to do so might cause. While these

examples may show that loss of goodwill, reputation, and business opportunities may conceivably result from its inability to access the Slack channel, it is not enough to show "only the possibility of harm and not its imminency." *T-Mobile Northeast*, 249 F. Supp. 3d at 683; *see also Hancock v. Essential Resources, Inc.*, 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Because that is all that Hayvin has done, it has not established that it is entitled to a preliminary injunction.

Moreover, Hayvin's rejection of Workinman's May 10 offer to provide the server reset information undermines its assertion that its inability to access that information is causing actual and imminent irreparable harm. *See OurBus, Inc. v. City of Ithaca, New York*, No. 19-CV-356, 2019 WL 2710111, at *21 (N.D.N.Y. June 28, 2019). Hayvin "cannot mask an ongoing failure on its part to mitigate its damages as an ongoing instance of irreparable harm." *Lanvin, Inc. v. Colonia, Inc.*, 739 F. Supp. 182, 193 (S.D.N.Y. 1990).

Finally, Hayvin is correct that the Agreement stipulates that a breach of the relevant provisions would irreparably harm Hayvin and that such a breach would entitle Hayvin to "equitable relief (including, but not limited to, injunctive relief)." ECF No. 1-1 at 3. But, while the Court gives some weight to this contractual language, it "does not control" the Court's determination of whether preliminary injunctive relief is appropriate. *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 674 (2d Cir. 2023) (citing *Ticor Title Ins. Co.*, 173 F.3d at 69; *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987)). Without more, this stipulation is not enough to outweigh Hayvin's failure to demonstrate irreparable harm. *Cf. Ticor Title Ins. Co.*, 173 F.3d at 69 (finding irreparable harm where contractual stipulation was one of several reasons to do so).

Taken together, the Hayvin's sparse allegations of irreparable harm and the contractual language stipulating to irreparable harm are not enough to demonstrate that Hayvin is suffering

any actual or imminent injury that rises to the level of irreparable harm. Moreover, Hayvin's assertion of irreparable harm is undermined by its apparent refusal to take action that would have mitigated much of the harm that Hayvin alleges. Because Hayvin has not demonstrated irreparable harm, the Court need not address the remaining elements and concludes that Hayvin is not entitled to preliminary injunctive relief. *See Monowise*, 2018 WL 2089342, at *2.

Nevertheless, although Hayvin has not demonstrated irreparable harm sufficient to warrant a preliminary injunction, the Court agrees that Hayvin's inability to reset its servers may cause some harm while the action remains pending. Workinman appeared to be willing to provide the information required to mitigate that potential harm. Accordingly, the Court will permit Hayvin to renew its motion for a preliminary injunction if Workinman does not provide the server login information and reset instructions to Hayvin on or before June 6, 2023.

## CONCLUSION

For the reasons stated herein, Hayvin's motion for a preliminary injunction (ECF No. 7) is DENIED WITHOUT PREJUDICE to renewing the motion if Workinman does not provide the server login information and reset instructions to Hayvin on or before June 6, 2023.

IT IS SO ORDERED.

Dated: June 1, 2023
      Rochester, New York

                                    HON. FRANK P. GERACI, JR.
                                    United States District Judge
                                    Western District of New York