UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HAYVIN GAMING, LLC,

                        Plaintiff,

                                           Case # 23-CV-06172-FPG

v.

                                           DECISION AND ORDER

WORKINMAN INTERACTIVE, LLC,

                        Defendant.

## INTRODUCTION

This action arises out of a contract dispute between Plaintiff Hayvin Gaming, LLC ("Hayvin Gaming") and Defendant Workinman Interactive, LLC ("Workinman") related to Workinman's work on a mobile poker game called Hayvin Poker. Plaintiff previously filed a motion for partial summary judgment (ECF No. 43), which was denied. ECF No. 76. It then filed a second motion for partial summary judgment on the issue of whether Defendant materially breached its agreement with Plaintiff. ECF No. 58. Defendant opposed that motion. ECF No. 69. Defendant moved for summary judgment on all eight of Plaintiff's claims and on its three counterclaims. ECF No. 62. Plaintiff opposed the motion. ECF No. 70. Plaintiff also filed a motion to set bond, ECF No. 73, which Defendant opposes, ECF No. 77. For the reasons that follow, Plaintiff's second motion for partial summary judgment (ECF No. 58) is DENIED, and Defendant's motion for summary judgment (ECF No. 62) is DENIED IN PART AND GRANTED IN PART. Additionally, Plaintiff's motion to set bond (ECF No. 73) is DENIED WITHOUT PREJUDICE.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND

The following facts are undisputed, unless otherwise noted. In 2014, Plaintiff began developing a mobile poker game called Hayvin Poker. ECF No. 62-21 ¶ 5. Beginning in 2020, Plaintiff hired Defendant to work on several "sprint" contracts to finalize Hayvin Poker and prepare it for release. *Id.* ¶ 6. Later, on September 21, 2022, Plaintiff and Defendant entered into a Master Agreement for Professional Services (the "original Agreement"). *Id.* ¶ 7. Under the original Agreement, Defendant agreed to provide two full-time developers and one part-time artist to work on the Hayvin Poker project. *Id.* According to Plaintiff, it agreed to pay Defendant $24,000 per month in exchange for two full-time developers contributing a total of 320 hours per month. ECF No. 58-15 ¶ 4. Defendant disputes this characterization, acknowledging that the deliverables set out in the original Agreement included two full-time developers, but denying that it required them to "contribute" a "total of 320 hours per month." ECF No. 69-17 ¶ 4.

Plaintiff maintains that Defendant never complied with the requirement to provide 320 developer hours per month. ECF No. 58-15 ¶ 5. Defendant's hour logs show that Defendant's developers failed to commit the 320 hours purportedly required under the original Agreement—

falling, for example, 153 hours short in October 2022 and 27 hours short in November 2022. *Id.* ¶¶ 6–7. However, Defendant maintains that there are inaccuracies in the hour logs and that its employees committed considerably more hours than reflected in the hour log. ECF No. 69-17 ¶ 5. For example, although the November 11, 2022, November 18, 2022, December 2, 2022, December 16, 2022, January 6, 2023, and March 10, 2023 hour logs for Defendant's employee Justin Dambra show that he worked zero hours on those days, the internal Slack channel shows that he was working and responding to Plaintiff on those days.[1] *Id.*

Within months, the parties' relationship deteriorated. In mid-December 2022, the parties held a video conference call, during which Defendant's project director Bryen Aoyama informed Plaintiff that Defendant was going to terminate the original Agreement because the team was not comfortable with its structure.[2] ECF No. 58-15 ¶ 15–16; *see* ECF No. 58-9. During the call, the parties discussed the possibility of reducing the team to one full-time developer, Justin Dambra, and one part-time artist, Brian Thuringer. ECF No. 58-9 at 1.

Shortly after the conference call, on January 2, 2023, Plaintiff's CEO Bryan Mileski sent Defendant an email demanding that the parties come up with a plan to move forward immediately. ECF No. 69-12 at 14. Defendant's COO, Keith McCullough, responded that day, sending Plaintiff an email with an attachment that Plaintiff describes as a "final proposed amendment" of the original Agreement, but that Defendant describes as a "proposed estimate" (the "Retainer Estimate"). *Id.* at 13; ECF No. 62-21 ¶ 27; ECF No. 43-18 ¶ 21. McCullough's email explained that because the Defendant's team wanted a "hard stop date," but believed that Hayvin was

---

[1] Slack is a digital instant messaging program developed for professional and organizational communication.

[2] Defendant disputes Plaintiff's characterization of the conference call and refers the Court to the transcript of that call. *See* ECF No. 58-9. The Court's description of the conference call reflects the Court's independent review of the transcript.

"working on finding a replacement team in good faith," the "offer [was] up to 12 weeks from Jan[uary] 3rd (end at March 28th)." ECF No. 69-12 at 13. McCullough then stated that "the full agreement is detailed in the attached document." *Id*. His email was accompanied by a signature containing his full name and title:

> Keith McCullough
> COO
>
> WM Interactive
> Games at Work

*Id*. at 14. Plaintiff's CEO Bryan Mileski responded the next day:

> Hi Keith,
>
> We are ok with this. Really appreciate your attempt to find an amicable solution.
>
> Thank you for your support the last three years and for helping to get us this far.
>
> It's been a blast working with you, nothing but the utmost respect and love for you and we wish you amazing success!
>
> Thank you,
> Bryan

*Id*. McCullough replied on January 4:

> To you guys as well! Let's set Hayvin up for a smooth launch with this time, and onboard a team that will carry the game on to be the massive success it deserves.
>
> Best,
> Keith McCullough

ECF No. 43-7 at 1. According to Defendant, Mileski's response was not an acceptance of the Retainer Estimate, pointing to the fact that the parties continued to negotiate potential changes to the original Agreement but never agreed to an amendment or modification. ECF No. 62-21 ¶¶ 28–

32. According to Plaintiff, Mileski's response on January 3 constituted an acceptance and these follow-up communications represented "further proposed amendments" which "added or altered material terms of the" Retainer Estimate. ECF No. 43-19 at 11.

Regardless, Plaintiff proceeded in accordance with the terms of the Retainer Estimate, obtaining a new developer who would take over work on Hayvin Poker from Defendant. ECF No. 43-18 ¶ 27. Plaintiff also paid Defendant in the amounts described in the Retainer Estimate. *Id.* ¶¶ 28, 29. Defendant retained one payment as partial payment for the period of December 16, 2022 to January 15, 2023 and rejected the next two payments as insufficient under the original Agreement. ECF No. 62-21 ¶ 39; *see also* ECF No. 43-18 ¶ 38.

At the end of January, Defendant informed Plaintiff that it would continue to perform— and bill Plaintiff—under the terms of the original Agreement. ECF No. 62-21 ¶ 33. Pursuant to the original Agreement, Defendant billed Plaintiff $24,000 in January, February, and March 2023. *Id.* ¶ 41. The January 2023 hour log show that Defendant's developers and artists again fell short of the 320 hours purportedly required under the original Agreement. ECF No. 58-15 ¶ 9. Defendant asserts that the January log also understates how many hours Defendant's employees actually worked. ECF No. 69-17 ¶ 9. On March 18, 2023, Defendant issued a notice of default under the original Agreement based on Plaintiff's purported underpayments. ECF No. 62-21 ¶ 40.

On March 24, 2023, Plaintiff brought the present action in this Court. ECF No. 1. In its complaint, Plaintiff brought eight causes of action against Defendant: (1) a declaratory judgment that the original Agreement was validly amended on January 3, 2023, (2) a breach of contract claim that Defendant breached the initial Agreement and the Retainer Estimate, (3) a claim for breach of the implied duty of good faith and fair dealing, (4) a conversion claim, (5) specific performance of Defendant's contractual obligations, (6) injunctive relief, (7) a fraud claim, and (8)

a negligent misrepresentation claim. ECF No. 1. In response, Defendant brought three counterclaims: (1) a request for declaratory judgment that the September 21, 2022, Agreement is valid and binding on the parties, (2) a breach of contract claim, and (3) an unjust enrichment claim. ECF No. 11.

## DISCUSSION

Defendant moves for summary judgment on all of Plaintiff's claims and on its three counterclaims. ECF No. 62. Plaintiff moves for partial summary judgment on the issue of whether Defendant materially breached its original Agreement with Plaintiff. ECF No. 58. Plaintiff also moves to set bond. ECF No. 73. The Court discusses each motion in turn.

## I.    Defendant's Motion for Summary Judgment

For the reasons that follow, Defendant's motion for summary judgment on Plaintiff's eight claims and on Defendant's three counterclaims is denied in part and granted in part.

### a.    Plaintiff's First, Second, Fifth, and Sixth Claims

Defendant argues that Plaintiff's First, Second, Fifth, and Sixth causes of action are premised on Plaintiff's contentions that (a) the original Agreement between the two parties was amended in January 2023 and (b) Defendant has improperly withheld its work product from Plaintiff. ECF No. 62-20 at 11. Defendant further argues that these claims fail because there was no amendment to the original Agreement and Defendant is not required to provide Plaintiff with its work product unless it is paid in full.[3] *Id.*

---

[3] Defendant also argues that Plaintiff's first claim for declaratory judgment is duplicative of its breach of contract claim. ECF No. 62-20. However, Plaintiff explains in its opposition that its claim for declaratory judgment seeks a determination that the January 3 email exchange amended the original Agreement while its breach of contract claim relates to Defendant's alleged violations of the original Agreement and its purported amendments. ECF No. 70 at 15. Defendant did not respond to this argument in its reply and therefore, based on Plaintiff's explanation of the differences between the two claims, the Court concludes they are not duplicative.

6

Plaintiff's first claim is for a declaratory judgment that the original Agreement was amended by the Retainer Estimate. ECF No. 1 at 17. Plaintiff's second claim is that Defendant breached the original Agreement, and the Retainer Estimate. *Id.* at 18. Plaintiff's fifth and six claims for specific performance and injunctive relief both seek to have Defendant return its work product to Plaintiff, which Plaintiff argues has been wrongfully withheld. *Id.* at 21–22. Therefore, the Court agrees that Plaintiff's First, Second, Fifth, and Sixth claims are premised on the contention that either the original Agreement was properly amended, and/or that Defendant has improperly withheld its work product. And the Court agrees that the claims would fail if Plaintiff could show it was entitled to summary judgment that the original Agreement was not amended and that Defendant is not improperly withholding the work product.[4] However, the Court concludes that there are genuine disputes of material fact as to whether the original Agreement was amended and whether Defendant has improperly withheld its work product from Plaintiff. Consequently, the Court cannot grant summary judgment to Defendant on Plaintiff's First, Second, Fifth, and Sixth Claims.

### i. *Amendment of the Original Agreement*

First, as discussed in the Court's Decision and Order on Plaintiff's first partial motion for summary judgment (ECF No. 76), core to the parties' dispute is whether the January 2–3, 2023 email exchange between the parties amended the original Agreement, making the terms of the Retainer Estimate binding. Plaintiff asserts that it did, because the email exchange satisfies the signed-writing requirement of Section 8.11 of the original Agreement. ECF No. 70 at 12.

---

[4] While the Court acknowledges that Plaintiff's second claim for breach of contract as to the original Agreement could be split from the claim that Defendant breached the Retainer Estimate and could proceed even if the original Agreement was not validly amended, because it concludes that summary judgment is not warranted, it does not need to delve into that possibility. Further, for the reasons discussed in Part I(b), *infra*, summary judgment is also not warranted on Plaintiff's breach of the original Agreement claim.

Defendant says it did not, because the email exchange is not a writing signed by both parties, and the parties continued to negotiate the terms of the modification in the days following that exchange. ECF No. 62-20 at 12, 15. In its earlier decision, the Court denied Plaintiff's motion on the issue of whether the original Agreement was amended due to Plaintiff's ambiguous response to the Retainer Estimate and the parties' subsequent conduct. ECF No. 76 at 7. For similar reasons, the Court concludes that Defendant has failed to establish that it is entitled to summary judgment.

Section 8.11 of the original Agreement provides that no modification of the original Agreement will be binding on the parties unless it is in writing and signed by both parties. In general, such "no oral modification" clauses are enforceable under New York law. *Israel v. Chabra*, 906 N.E.2d 374, 377 (N.Y. 2009) (citing N.Y. Gen. Oblig. Law § 15-301(1)). The question is whether the January 2023 email exchange constitutes a modification in writing signed by both parties.

Courts applying New York law have held that email exchanges can satisfy a requirement that a modification of an agreement, or the agreement itself, be in writing. *See e.g.*, *Ion Audio, LLC v. Bed, Bath & Beyond, Inc.*, No. 15-CV-8292, 2019 WL 1494398, at *3–4 (S.D.N.Y. Apr. 2, 2019) (email exchange satisfied "no oral modification" clause); *Stevens v. Publicis, S.A.*, 50 A.D.3d 253, 254–55 (1st Dep't 2009) (email exchange satisfied statute of frauds and no oral modification provision). An email exchange may therefore, "constitute an enforceable contract, even if a party subsequently fails to sign implementing documents, when the communications are sufficiently clear and concrete to establish such an intent." *Brighton Inv., Ltd. v. Har-Zvi*, 88 A.D.3d 1220, 1222 (3d Dep't 2011) (internal quotation marks omitted). Further, an email exchange where each party puts their names at the end of the email may constitute a "signed writing." *Stevens,* 50 A.D.3d at 256 (holding that "[defendant's] name at the end of his e-mail constituted a 'signed writing'").

8

In this case, the emails show that both parties signed their names at the end of the email, demonstrating that the emails were "signed." ECF No. 43-7 at 1–2. Therefore, the Court concludes that under New York State law, the email exchange, combined with the Retainer Estimate, could satisfy Section 8.11's no oral modification provision so long as the communications between the parties are sufficiently clear and concrete to establish intent.

Thus, whether the original Agreement was amended depends on whether the parties' words and deeds established their intent to enter into a binding agreement. *Brighton Inv., Ltd.,* 88 A.D.3d at 1222. Mutal assent—that is, offer and acceptance—is fundamental to creating a binding agreement. *See Beacon Term. Corp. v. Chemprene, Inc.*, 75 A.D.2d 350, 354 (2d Dep't 1980). Under New York law, "an acceptance 'must comply with the terms of the offer and be clear, unambiguous, and unequivocal.'" *Int'l Bus. Machs. v. Johnson*, 629 F. Supp. 2d 321, 330 (S.D.N.Y. 2009) (quoting *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 83 (2d Cir. 1998)). Whether an acceptance is unambiguous or unequivocal "depends not on the subjective, undisclosed intent of the offeree, but rather on the offeree's words and actions as viewed from the perspective of a reasonable person." *Id.* (citing *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984)).

When an offeree's purported acceptance is ambiguous or equivocal—that is, when "a reasonable person could view [it] as assent, rejection, or an invitation to bargain further," it is the offeror's reaction to it "that controls whether the parties have entered into a contract." *Id.* "In short, how the offeror treats the offeree's language will, assuming that treating the language either as language of acceptance or treating it as language requiring further discussion is reasonable, determine the language's effect." *Id.* at 330–31. Mutual assent is a question of fact. *See Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 389 (S.D.N.Y. 2005) (citing *U.S. Titan, Inc. v.*

*Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 145 (2d Cir. 2001)). So too are "questions as to what the parties said, what they intended, and how a statement by one party was understood by the other." *Ronan Assocs., Inc. v. Local 94-94 A-94B*, 24 F.3d 447, 449 (2d Cir. 1994).

Construing the evidence in the light most favorable to Plaintiff, there is sufficient evidence for a reasonable factfinder to conclude that the parties did amend the original Agreement. A reasonable factfinder could conclude that Mileski's response to the Retainer Estimate—that Plaintiff was "ok with this"—combined with the parties' actions following that email demonstrate that the parties understood the emails constituted an agreement to modify the original Agreement and made the Retainer Estimate binding. *See Ronan Assocs.*, 24 F.3d at 449; *Bazak*, 378 F. Supp. 3d at 389.

Defendant argues it did not interpret the response as an acceptance. As evidence of this, it cites to a formal proposed "Modification to the Master Service Agreement" that it sent to Plaintiff on January 5, 2023. ECF No. 62-20 at 13. When Plaintiff responded by email to the "Modification to the Master Service Agreement," Plaintiff referred to Defendant's January 2 e-mail as an "e-mail summary" and said it would review the new document. *Id.* On January 11, Plaintiff rejected certain terms in the document and proposed different terms in an email. *Id.* Defendant contends that the January 11 email constitutes a counteroffer and therefore extinguished any proposals offered by Defendant. *Id.* at 13–14. It further argues that the parties continued to negotiate proposed amendments throughout January 2023 and that Defendant informed Plaintiff in its January 27 email that it would continue to perform under the original Agreement. *Id.* at 14. It maintains that Plaintiff never objected or rejected Defendant's January 27, 2023, email and thus Plaintiff was fully aware that Defendant was performing and would continue to perform under the terms of the unmodified Agreement. *Id.*

On the other hand, Plaintiff argues that the parties reached a deal in the January 2–3, 2023, email exchange and that Defendant's actions following that exchange were simply efforts to walk back its agreement. ECF No. 70 at 10–11. As of evidence of this, Plaintiff cites to the deposition of Keith McCullough, Defendant's former COO, in which the following exchange occurred:

> Q: So you sent Hayvin Gaming an email saying we will agree to these terms and Hayvin Gaming said ok, that's good for us. You just decided nah, never mind. We don't like that anymore, so we're not going to follow through with it?
>
> [Objection]
>
> A: Evidently. Apparent—somewhat, yes.
>
> [. . .]
>
> Q: Why didn't Workinman just provide an agreement that reflected the terms that you offered on January 2nd?
> [objection]
>
> A: It seemed that once we got into the—the contract weeds of it, there was some more complexity there.
> [. . .]
>
> Q: Was the complexity simply that Workinman wanted different terms that were more advantageous to Workinman?
>
> A: Perhaps. Theres—it's—yeah. I guess potentially somewhat.

ECF No. 70 at 10. Plaintiff maintains that this demonstrates that all of the continued negotiations alleged by Defendant were one-sided and took place after the parties had already agreed to the terms. *Id.* It further argues that Defendant's attempts to re-negotiate more favorable terms does not undermine the original amendment. *Id.*

Additionally, it contests Defendant's assertion that Plaintiff never objected or rejected Defendant's January 27, 2023, email. *Id.* at 11. It maintains that on January 31, 2023, Plaintiff's attorneys sent a letter rejecting the assertions in the January 27 email and stating that Plaintiff

would only be performing pursuant to the terms of the parties' Retainer Estimate. *Id.* It also notes that Defendant's CEO acknowledged receipt of that letter in his deposition. *Id.*

The Court concludes that, construing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, a reasonable factfinder could find that Defendant interpreted Mileski's response as an acceptance. In his deposition, McCullough seemingly acknowledged that the purported continued "negotiations" were one-sided. McCullough also appears to agree with Plaintiff's lawyer that Defendant wanted more advantageous terms than those in the initial email. He also implies that Defendant understood that Plaintiff had agreed to the terms in the initial email, but that Defendant decided to add other terms after that agreement.

From this evidence, a reasonable factfinder could conclude that Defendant had interpreted Mileski's response as an acceptance, and that Defendant's later attempts to negotiate were simply attempts to walk back that agreement. Thus, the Court cannot grant summary judgment because Mileski's response and the parties' conduct following the January 2–3 email exchange leave questions of fact that must be resolved before determining whether the parties amended the original Agreement. *See Ronan Assocs.*, 24 F.3d at 449; *Bazak*, 378 F. Supp. 3d at 389.

### ii. Withholding of Work Product

Second, the Court concludes that there are genuine disputes of material fact as to whether Defendant has improperly withheld its work product from Plaintiff. Defendant argues that it has no duty to turn over its work product until Plaintiff has paid Defendant in full. ECF No. 62-20 at 16. It contends that even though Plaintiff has attempted to pay Defendant in accordance with the terms of the Retainer Estimate, Plaintiff needs to pay Defendant under the terms of their original Agreement. *Id.* at 16–17. On the other hand, Plaintiff argues that it has paid Defendant in full and

12

in fact has overpaid Defendant because Defendant never complied with its obligation to provide two "full-time" developers to the project. ECF No. 70 at 14.

Defendant's argument is premised on its contention that the original Agreement was never amended, and that Plaintiff is therefore required to pay in accordance with the original Agreement. As discussed above, there are genuine disputes of material fact related to whether the original Agreement was amended. As for Plaintiff's contention that it has overpaid Defendant, for the reasons discussed in subsection b, *infra*, there are also genuine disputes of material fact as to whether Defendant complied with its obligations under the original Agreement. Therefore, there are genuine disputes of material fact as to whether Plaintiff has fully paid Defendant, precluding summary judgment on the issue of whether Defendant has improperly withheld its work product from Plaintiff.

In response, Plaintiff argues that the terms of the original Agreement require Defendant to turn over the work product at the request of Plaintiff regardless of whether Plaintiff pays Defendant. ECF No. 70 at 13–14. It cites to language in Section 4.3 of the original Agreement, which reads

> Unless otherwise directed by the Customer [Plaintiff], upon the completion of the services in the Schedules or upon the earlier termination of this Agreement and upon the Customer's payment of all fees owed to the Consultant [Defendant] under this Agreement, Consultant shall immediately turn over to Customer all work product created by Consultant under this Agreement as well as all materials and deliverables developed, including, but not limited to, source code, working papers, descriptions, reports, notes and data.

*Id*. Plaintiff argues that the clause "unless otherwise directed by the Customer" modifies the entire sentence. *Id.* Essentially, it is arguing that the clause means that Defendant is required to turn over work product when directed by Plaintiff *or* "upon the completion of the services in the Schedules or upon the earlier termination of this Agreement and upon the Customer's payment of all fees

owed to the Consultant under this Agreement." *See id.* As further evidence of this reading, it cites to Section 8.4 of the original Agreement, arguing that this section limits Defendant's rights following Plaintiff's failure to pay undisputed amounts to "suspend[ing] all services under the applicable schedule without penalty." *Id.* at 14.

Defendant argues that this is not a proper reading of the sentence. It argues that the clause, "unless otherwise directed by the Customer" modifies "upon the completion of the services in the Schedules or upon the earlier termination of this Agreement." ECF No. 72 at 7–8. And as such, the clause "upon the Customer's payment of all fees owed to the Consultant under this Agreement" is independent of the modification. *See id.* Essentially, it is arguing that it is only required to turn over the work product when directed by Plaintiff or when the agreement is completed or terminated *and* it has received full payment. *See id.* Defendant argues that Plaintiff's reading is contrary to well-founded principles of contract interpretation—that an agreement should not be construed in a manner that renders an express condition precedent meaningless and should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the intent of the parties. *Id.* at 7.

Under New York law, whether contract language is ambiguous is a question of law. *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) "Ambiguity is determined by looking within the four corners of the document, not to outside sources" *Kass v. Kass*, 696 N.E.2d 174, 180 (N.Y. 1998). Contract language is ambiguous when it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *JA Apparel Corp.*, 568 F.3d at 396–97. Generally, "interpretation of ambiguous contract language is a question of fact to be resolved

14

by the factfinder." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000). At the summary judgment stage, a court may only interpret ambiguous language as a matter of law where "the evidence presented about the parties' intended meaning [is] so one-sided that no reasonable person could decide the contrary." *3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 746–47 (2d Cir. 1999).

Here, the Court concludes that the language is ambiguous. It is unclear from the language whether the clause "unless otherwise directed by the customer," is modifying only "upon the completion of the services in the Schedules or upon the earlier termination of this Agreement" or if it is also meant to modify "and upon the Customer's payment of all fees owed to the Consultant under this Agreement." *See* ECF No. 58-2 at 3. Thus, the plain language is such that a reasonably intelligent person who has examined the entire integrated agreement in context could accept either interpretation as correct. *See JA Apparel Corp.*, 568 F.3d at 396–97. Therefore, the Court concludes that the language is ambiguous.

Each party argues that the language is not ambiguous for different reasons. However, the Court rejects these arguments. Plaintiff argues that Section 8.4 limits Defendant's rights following Plaintiff's failure to pay undisputed amounts only to "suspend[ing] all services under the applicable schedule without penalty." ECF No. 70 at 14. According to Plaintiff, this demonstrates that "unless otherwise directed by the customer," means that Defendant must turn over the work product when it is directed to do so by Plaintiff regardless of payment because its only remedy under the contract for unpaid fees is to suspend services. *Id.* The Court disagrees. Section 8.4 does not limit Defendant to suspending services, it simply reserves its right to do so without penalty. Therefore, Section 8.4 is not inconsistent with Defendant's reading of the sentence in question and the Court rejects Plaintiff's argument that the language is unambiguous.

Defendant argues that its interpretation is correct because interpreting the phrase "unless otherwise directed by the customer," as giving the Plaintiff the ability to demand the work product at any time renders an express condition precedent—that Defendant be paid in full for its services—meaningless. ECF No. 72 at 8. It further argues that the Court must enforce the express conditions precedent to enforce the will of the parties and because not doing so would create an impractical result. *Id*. The Court disagrees. Interpreting the clause "unless otherwise directed by the customer" as modifying the entire sentence does not necessarily render the clause that the Defendant be paid in full meaningless. Instead, it could be read to mean that even if it is not directed to do so, upon completion or termination and full payment, it must turn over the work product.

Additionally, it is unclear whether Plaintiff's interpretation of the sentence would be contrary to the will of the parties or create an impractical result. The language immediately before the language in question says that the Defendant acknowledges that any work product created by Defendant to create the contract's deliverables constituted "works made for hire" and were the exclusive property of Plaintiff. ECF No. 58-2 at 3. It also said that all work produced not deemed "works made for hire" by operation of law were assigned to Plaintiff. *Id*. Immediately preceding the contested sentence the original Agreement states, "Upon the Customer's request after payment of all fees owed to Consultant [Defendant], Consultant agrees to execute any instruments and do all things reasonably necessary by the Customer [Plaintiff] in order to further perfect the Customer's ownership rights." *Id*. Given the language indicating Plaintiff's exclusive property right and assigning all rights to Plaintiff, allowing Plaintiff to take control of the work product upon request without payment does not seem to be an unreasonable interpretation. Further, the sentence that begins "upon the Customer's request after payment of all fees" seems to contemplate

16

that the work product might be turned over prior to full payment. Thus, the Court rejects Defendant's arguments that the language is unambiguous.

While a court may interpret ambiguous language as a matter of law where "the evidence presented about the parties' intended meaning [is] so one-sided that no reasonable person could decide the contrary," the Court concludes that the evidence in this case is not so one-sided as to warrant summary judgment. *See 3Com Corp.,* 171 F.3d at 746–47. As discussed above, the evidence submitted is such that a reasonable jury could return a verdict for either party. As such, there are genuine disputes of material fact as to whether Defendant has been wrongfully withholding its work product. Therefore, Defendant has failed to demonstrate that it is entitled to summary judgment on Plaintiff's First, Second, Fifth, and Sixth Claims.

### b. Plaintiff's Fourth, Seventh, and Eighth Claims

Defendant argues that Plaintiff's Fourth, Seventh, and Eighth causes of action for conversion, fraud, and negligent misrepresentation are premised on Plaintiff's contention that Defendant improperly billed Plaintiff for work performed on the Hayvin Poker Project. ECF No. 62-20 at 21.[5] It argues that it did not improperly bill Plaintiff because the original Agreement was a fixed price or retainer contract—not an hourly rate contract. *Id.* Therefore, it argues, Plaintiff's claims that it improperly billed Plaintiff for hours it did not work fail because it was not required to perform a certain number of hours per month to receive payment. *Id.* at 23.

Defendant argues that the language of the original Agreement is unambiguously a fixed price schedule. *Id.* at 22. As evidence of this, it cites, to Section 3.3 of the original Agreement which reads that "[w]ork performed on a fixed price basis shall be invoiced as specified by the

---

[5] While the Court is not convinced that Plaintiff's claims necessarily fail if Defendant could prove that it did not improperly bill Plaintiff, the Court need not address that possibility because it concludes that Defendant has not demonstrated that there are no genuine disputes of material fact as to whether Defendant improperly billed Plaintiff.

applicable schedule." ECF No. 58-2 at 2. It also cites to Section 1.3 of the original Agreement that says "[i]f there is a conflict between this Agreement and any Schedule, the terms of the Schedule will govern the provision." *Id.* at 1.

As Defendant notes, there is only one schedule to the original Agreement, Schedule No. 1, which is titled "Fixed Price Schedule." *See* ECF No. 62-20 at 23. While Defendant admits that the schedule provides that Defendant commit two full-time developers at a rate of $63 per hour each (320hrs/month) and one part-time artist at a rate of $63 per hour (64hrs/month) for twelve months to work on the game, it argues that the original Agreement plainly calls for Plaintiff to pay Defendant a fixed price fee in the amount of $24,000 per month for the team and work performed by Defendant on the project. *Id.* Thus, Defendant argues that on its face, the original Agreement expressly gives deference to a Schedule that calls for a fixed monthly rate, not an hourly rate, to be paid to Defendant in the amount of $24,000, and therefore, it is of no consequence that its employees did not work the specified number of hours. *Id.*

Plaintiff disagrees. ECF No. 58-14 at 5. It argues that there is no reasonable dispute regarding Defendant's obligations. *Id.* As the schedule states, Plaintiff was to pay Defendant $24,000 per month in exchange for deliverables that included "2 Full-time Developers" contributing a "total of 320 hours per month." *Id.* The fact that the schedule is called a "Fixed Price" Schedule and that the payment schedule is a fixed monthly rate does not change that obligation. *See id.*

As discussed above, under New York law, whether contract language is ambiguous is a question of law. *JA Apparel Corp.,* 568 F.3d at 396. "Ambiguity is determined by looking within the four corners of the document, not to outside sources" *Kass,* 696 N.E.2d at 180. Contract language is ambiguous when it is "capable of more than one meaning when viewed objectively by

a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *JA Apparel Corp.*, 568 F.3d at 396–97.

Here, the Court concludes that the language is ambiguous. The language of the original Agreement states that it is a "Fixed Price Schedule" and a "12 Month Retainer for Live-Ops development and Art." ECF No. 58-2 at 9. It further states that services will be billed monthly for $24,000 with no indication that this number is based on an hourly rate. *Id.* The Court therefore concludes that in the context of the entire integrated agreement, a reasonably intelligent person could find that Plaintiff was to pay Defendant for the services rendered by Defendant, regardless of whether the Defendant's employees worked the specified number of hours on the project.

On the other hand, under the title of "Descriptions of Deliverables/Services," the original Agreement lists "2 Full-Time Developers at a rate of $63 per hour each (a total of 320 hours per month)." *Id.* The Court therefore also concludes that in the context of the entire integrated agreement, a reasonably intelligent person could find that the original Agreement required Defendant to have two full-time developers work 320 hours per month on the project as it was a deliverable/service rendered to Plaintiff.

Once a Court determines that language is ambiguous, extrinsic evidence as to the parties' intent may properly be considered. *JA Apparel Corp.*, 568 F.3d at 397. Generally, "interpretation of ambiguous contract language is a question of fact to be resolved by the factfinder." *Compagnie Financiere de CIC et de L'Union Europeenne,* 232 F.3d at 158. At the summary judgment stage, a court may only interpret ambiguous language as a matter of law where "the evidence presented about the parties' intended meaning [is] so one-sided that no reasonable person could decide the contrary." *3Com Corp.*, 171 F.3d at 746–47.

19

Defendant argues that extrinsic evidence supports its interpretation of the original Agreement. ECF No. 62-20 at 24. First, it argues that Plaintiff made previous payments of $24,000 under the agreement and thus the course of conduct and history suggest that Plaintiff agreed to a fixed-price payment for Defendant's team. *Id.* Second, it argues that the parties both understood that the original Agreement was a fixed-price contract. *Id.* Specifically, it argues that Plaintiff's owner, Bryan Mileski, admitted that the agreement was a retainer arrangement and that he understood that the work was not based on tracking hours or days off. *Id.*

Plaintiff concedes that it paid the $24,000 per month at first. ECF No. 70 at 16. However, it claims that Defendant actively concealed its contractual breaches through opaque and misleading statements regarding its work while the payments were ongoing. *Id.* For instance, Defendant told Plaintiff that it had worked 450 hours from November 14 to December 16, 2022. *Id.* Plaintiff claims that this statement is at least materially misleading, if not false, because Defendant's timesheets show that the two full-time developers worked a total of 260 hours between November 14 and December 13, 2022. *Id.* Additionally, it argues that Defendant's former COO, Keith McCullough, who was responsible for negotiating the original Agreement, indicated in his deposition that the original Agreement required Defendant's full-time developers to commit 320 hours per month to the project. ECF No. 58-14 at 6.

In this case, the Court concludes that the evidence is not so one-sided as to warrant summary judgment. Based on the evidence, a reasonable person could conclude that Defendant's evidence of course of dealings and statements from Mileski demonstrate it was a "fixed rate" contract that did not require Defendant to contribute a certain number of hours. Conversely, a reasonable person could accept Plaintiff's explanation that it paid the full contract price because it was under the impression that Defendant was working 320 hours per month on the project. A

reasonable person could also find that the Defendant's COO's acknowledgment that it was an hourly rate contract demonstrates that Defendant was required to work 320 hours. Therefore, there are genuine disputes of material fact as to whether Defendant was required to work 320 hours per month on the project and Defendant has failed to demonstrate that it is entitled to summary judgment on Plaintiff's Fourth, Seventh, and Eighth Claims.

### c.  Plaintiff's Third Claim

Defendant moves for summary judgment on Plaintiff's third claim for breach of the implied covenant of good faith and fair dealing on the basis that the evidence refutes Plaintiff's claim. ECF 62-20 at 19. Plaintiff counters that it produced sufficient evidence to support its claim. ECF No. 70 at 18. The Court declines to address the sufficiency of the evidence because Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is duplicative.

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (citation omitted). As such, New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Id.* at 81. Consequently, a claim for breach of the implied covenant of good faith and fair dealing can only be maintained in conjunction with a breach of contract claim "if the damages sought by the plaintiff for breach of the implied covenant are not 'intrinsically tied to the damages allegedly resulting from breach of contract.'" *Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*, No. 98 Civ. 6907, 2000 WL 335557, at *8 (S.D.N.Y. Mar. 30, 2000) (quoting *Canstar v. J.A. Jones Constr. Co.*, 212 A.D.2d 452, 452 (1st Dep't 1995)).

In this case, Plaintiff argues that its claim for breach of the implied covenant of good faith and fair dealing is based on evidence that "(i) Workinman's developers did not commit full-time employment to the Hayvin Poker Project, (ii) Workinman did not perform work Hayvin Gaming requested despite falling short of its contractual hour commitment, (iii) Workinman threatened to stop working on the Hayvin Poker Project when Hayvin Gaming complained about Workinman's hours, (iv) Workinman refused to honor its January 3, 2023 amendment to the [original] Agreement unless Hayvin Gaming agreed to additional concessions, and (v) Workinman refused to assist Hayvin Gaming in onboarding a new developer to comply with its obligations under the Parties' amendment." ECF No. 70 at 17–18.

These are the exact arguments Plaintiff raises when supporting its breach of contract claim. In its opposition to Defendant's motion for summary judgment, Plaintiff states that its breach of contract claim seeks damages for Defendant's violation of the original Agreement and Retainer Estimate. *Id.* at 15. In its second motion for partial summary judgment, Plaintiff asks the Court to grant partial summary on its claims that Defendant materially breached the original Agreement. ECF No. 58-14 at 19. In its motion for partial summary judgment on its breach claim, it argues that (1) Defendant did not comply with its contractual obligations because it did not commit two full-time developers for a total of 320 hours a month, *id.* at 4, (2) Defendant's employees testified that there were always additional tasks they could have been working on even though they reported less than 320 hours, *id.* at 12, (3) when Plaintiff told Defendant it was in material breach, Defendant responded that it intended to exit the relationship, *id.* at 15, (4) that the parties validly amended the original Agreement, but Defendant refused to honor it unless Plaintiff agreed to additional concessions, *id.* at 16, and (5) Defendant refused to honor the Retainer Estimate, *id.* at 9. Therefore,

all of the arguments raised in Plaintiff's breach of the implied covenant of good faith and fair dealing claim are also addressed in its breach of contract claim.

Accordingly, the Court concludes that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is based on the same set of facts as its breach of contract claim and any damages are intrinsically tied to the damages resulting from the alleged breach. *See Page Mill Asset Mgmt.*, 2000 WL 335557, at *8. As such, it dismisses the claim *sua sponte* on that ground. *See 4Kids Entm't, Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 241 (S.D.N.Y. 2011) (*sua sponte* dismissing plaintiffs' claims for breach of the implied covenant of good faith and fair dealing because "New York does not recognize a separate claim for breach of an implied covenant of good faith where a contract exists").

## II.    Defendant's Counterclaims

Defendant also moves for summary judgment on its three counterclaims. The first counterclaim is for declaratory judgment that the original Agreement dated September 21, 2022, is valid and binding on the parties as the original Agreement was never validly amended. ECF No. 62-20 at 25. As the Court explained in Part I(a), *supra*, there are genuine disputes of material fact as to whether the original Agreement was amended. Therefore, Defendant is not entitled to summary judgment on its first counterclaim.

Next, Defendant argues it is entitled to summary judgment as to its second counterclaim for breach of contract including an award of attorney's fees. *Id.* Defendant argues that Plaintiff breached the original Agreement by tendering only $14,000 (the amount required by the Retainer Estimate) for payment instead of full $24,000 (the amount required under the original Agreement), and that Plaintiff must pay Defendant's attorney's fees as the original Agreement provides that Defendant is entitled to attorney's fees if it is required to take legal action to recover unpaid fees.

*Id.* at 26, 28. Thus, this claim is also based on Defendant's contention that the original Agreement was not validly amended. Because there are genuine disputes of material fact as to whether the original Agreement was amended, Defendant is not entitled to summary judgment on this claim.

Finally, Defendant argues that it is entitled to summary judgment as to its unjust enrichment claim for payment of the unpaid fees owed by Plaintiff. *Id.* at 29. Once again, this claim is premised on Defendant's contention that the original Agreement was not amended because it is based on the fact Plaintiff paid a reduced price to Defendant due to the Retainer Estimate, instead of the full price under the original Agreement. *See id.* at 30. Again, there are genuine disputes of material fact as to whether the original Agreement was amended that preclude summary judgment on this claim.

### III.    Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for summary judgment on its claim that Defendant materially breached the original Agreement. ECF No. 58. It argues that as a result of Defendant's material breach, Defendant cannot enforce the "signed writing" provision of the original Agreement, it cannot require Plaintiff to pay under the terms of the original Agreement after the material breach, and it cannot recover contractual attorney's fees. ECF No. 58-14 at 4. Plaintiff's specific argument is that it is entitled to partial summary judgment that Defendant "materially breached the [original] Agreement by falling short of its hourly work requirements, and, in fact, undertaking no efforts whatsoever to comply with its hourly work requirements." *Id.*

Plaintiff maintains that the terms of the original Agreement required that Defendant have two full-time developers contributing a total of 320 hours per month to the project. *Id.* at 5. Defendant argues that the original Agreement was for a fixed-price monthly retainer project—not an hourly contract—and consequently, it is of no importance whether it worked 320 hours per month on the project. ECF No. 69 at 10. As discussed in Part I(b), *supra*, there are genuine disputes

of material fact as to whether Defendant was required to work 320 hours per month on the project, precluding summary judgment on the issue.

Additionally, Plaintiff argues that Defendant repudiated the original Agreement, and that Plaintiff treated the repudiation as an anticipatory breach. ECF No. 71 at 9. According to Plaintiff, after it tried to hold Defendant to its contractual commitment to work 320 hours per month, Defendant responded that it intended to exit the relationship. ECF No. 58-14 at 8. This response, it argues, was an anticipatory breach and therefore, Defendant cannot enforce the terms of the original Agreement. ECF No. 71 at 9. However, the issue of whether Defendant was required to work 320 hours per month on the project must be decided prior to reaching the issue of the anticipatory breach. If Defendant was not required to work 320 per month on the project, then it was Plaintiff who initially repudiated the original Agreement by insisting that Defendant must work beyond its contractual obligations. Again, there are genuine disputes of material fact as to whether Defendant was required to work 320 hours per month on the project, precluding summary judgment on the issue. As such, Plaintiff's motion for partial summary judgment is denied.

## IV.    Motion to Set Bond

Given that the motions for summary judgment have both been denied in large part, the Court would ordinarily set a time and date for a status conference to discuss possible trial dates and to hear about the progress of the action. However, the parties are also disputing whether "bond" should be set in this case prior to trial so that the contested work product can be returned to Plaintiff. ECF No. 73-1. Plaintiff has stated that it has a potential investor and cannot secure the investment without control of the work product. *Id.* at 6. Plaintiff argues that the appropriate bond is $100,000. *Id.* at 4. Defendant argues that the appropriate bond is $185,000. ECF No. 77 at 9.

Although Defendant opposes the motion to set bond, it does not dispute that it must turn the work product over to Plaintiff when Plaintiff pays the full amount that is due. The only outstanding issue relevant to "bond" is what constitutes "full payment" and therefore, the issue is simply a matter of dollars and cents. Rather than delve into the novel and thorny issues raised in Plaintiff's motion—such as whether Defendant has established an artisan's lien and the applicability of C.P.L.R. § 7102(e), *see e.g.* ECF No. 73-1, ECF No. 77—the Court believes that it would be more prudent to return the case to Magistrate Judge Holland to determine whether further mediation would be productive especially, in light of (1) the denials of summary judgment, (2) the possibility of trial, and (3) the undisputed fact that Plaintiff is entitled to the work product upon full payment of the disputed amount to Defendant. Therefore, Plaintiff's motion to set bond is denied without prejudice pending further proceedings.

## CONCLUSION

For the foregoing reasons, Plaintiff's second motion for partial summary judgment (ECF No. 58) is DENIED. Additionally, Defendant's motion for summary judgment (ECF No. 62) is DENIED IN PART AND GRANTED IN PART, and Plaintiff's third claim for breach of the implied covenant of good faith and fair dealing is DISMISSED. Plaintiff's motion to set bond (ECF No. 73) is DENIED WITHOUT PREJUDICE. The parties are directed to return to Magistrate Judge Holland for potential mediation.

IT IS SO ORDERED.

Dated: January 23, 2025

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New Yor

26